# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

FREEDOM WATCH, INC., individually
and on behalf of those similarly situated,

                Plaintiff,

    v.

GOOGLE, INC., et al.,

                Defendants.

Civil Action No. 1:18-cv-02030-TNM

**Hon. Trevor N. McFadden**

## <u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ........................................................................................... 1

    A.    Defendants' Online Services And Terms Of Service ............................................ 1

    B.    Freedom Watch And Its Claims Against Defendants ............................................ 2

ARGUMENT ............................................................................................................... 3

I.    PLAINTIFF LACKS ARTICLE III STANDING TO ASSERT ANY CLAIM ............... 3

II.    PLAINTIFF FAILS TO STATE A VIABLE CAUSE OF ACTION ............................... 7

    A.    Plaintiff's First Amendment Claim Fails For Lack of State Action ..................... 7

    B.    Plaintiff Cannot State A Claim Under the Sherman Act ..................................... 11

    C.    Plaintiff's DCHRA Claim Fails As A Matter of Law .......................................... 15

III.    PLAINTIFF'S CLAIMS ARE BARRED BY SECTION 230 OF THE CDA ................ 17

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Arista Records LLC v. Lime Grp. LLC*,
    532 F. Supp. 2d 556 (S.D.N.Y. 2007)..............................................................................14

*Ashwander v. Tennessee Valley Authority*,
    297 U.S. 288 (1936)..........................................................................................................17

*Associated Gen. Contractors v. California State Council of Carpenters*,
    459 U.S. 519 (1983)..........................................................................................................15

*\*Baldino's Lock & Key Serv., Inc. v. Google LLC*,
    285 F. Supp. 3d 276 (D.D.C. 2018) ....................................................................17, 18, 19

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) .........................................................................................20

*Beecham v. United States*,
    511 U.S. 368 (1994)..........................................................................................................16

*\*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................12, 13

*Bender v. Williamsport Area School Dist.*,
    475 U.S. 534 (1986)............................................................................................................3

*Bennett v. Google*, LLC,
    882 F.3d 1163 (D.C. Cir. 2018) .......................................................................................18

*Blum v. Yaretsky*,
    457 U.S. 991 (1982)............................................................................................................7

*Bronner v. Duggan*,
    249 F. Supp. 3d 27 (D.D.C. 2017) .....................................................................................8

*Casterlow-Bey v. Google Internet Search Engine Co.*,
    2017 WL 6876215 (W.D. Wash. Sept. 26, 2017)..............................................................8

*Cent. Hardware Co. v. NLRB*,
    407 U.S. 539 (1972)............................................................................................................7

*\*Citizens for Responsibility & Ethics in Washington v. IRS*,
    21 F. Supp. 3d 25 (D.D.C. 2014) ...................................................................................5, 6

*\*City of Moundridge v. Exxon Mobil Corp.*,
    471 F. Supp. 2d 20 (D.D.C. 2007)...................................................................................14

*\*Committee of United States Citizens Living in Nicar. v. Reagan*,
    859 F.2d 929 (D.C. Cir. 1988) .........................................................................................10

*Cyber Promotions, Inc. v. Am. Online, Inc.*,
  948 F. Supp. 436 (E.D. Pa. 1996) .............................................................9, 10

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ................................................................................5

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ..................................................................19

*Estavillo v. Sony Comput. Entm't Am.*,
  2009 WL 3072887 (N.D. Cal. Sept. 22, 2009) ........................................11

*Fed. Prescription Serv. v. Am. Pharm. Ass'n*,
  663 F.2d 253 (D.C. Cir. 1981) ................................................................14

*Fehrenbach v. Zeldin*,
  2018 WL 4242452 (E.D.N.Y. Aug. 6, 2018) ...........................................8

*Fla. Audubon Soc. v. Bentsen*,
  94 F.3d 658 (D.C. Cir. 1996) ..................................................................6

*Flash Elecs., Inc. v. Universal Music & Video Distribution Corp.*,
  312 F. Supp. 2d 379 (E.D.N.Y. 2004) ....................................................14

*Forbes v. Facebook, Inc.*,
  2016 WL 676396 (E.D.N.Y. Feb. 18, 2016).............................................8

*Free Kick Master LLC v. Apple Inc.*,
  140 F. Supp. 3d 975 (N.D. Cal. 2015) ....................................................19

*Gettman v. Drug Enf't Admin.*,
  290 F.3d 430 (D.C. Cir. 2002) ................................................................7

*Green v. Am. Online (AOL)*,
  318 F.3d 465 (3d Cir. 2003).......................................................8, 9, 18, 20

*H.L. Hayden Co. v. Siemens Med. Sys., Inc.*,
  879 F.2d 1005 (2d Cir. 1989).................................................................14

*Howard v. Am. Online, Inc.*,
  208 F.3d 741 (9th Cir. 2000) ...........................................................8, 11

*Hudgens v. NLRB*,
  424 U.S. 507 (1976).................................................................................7

*Hunter ex rel. A.H. v. District of Columbia*,
  64 F. Supp. 3d 158 (D.D.C. 2014) .........................................................16

*In re Nifedipine Antitrust Litig.*,
  335 F. Supp. 2d 6 (D.D.C. 2004) ...........................................................14

*Island Online, Inc. v. Network Solutions, Inc.*,
  119 F. Supp. 2d 289 (E.D.N.Y. 2000) ....................................................10

ii

*Jackson v. Metro. Edison Co.,
    419 U.S. 345 (1974) ............................................................................................9, 10, 11

Jayne v. Google Internet Search Engine Founders,
    2007 WL 2852383 (M.D. Pa. Sept. 27, 2007) ............................................................8, 9

*Johnson v. Comm'n on Presidential Debates,
    869 F.3d 976 (D.C. Cir. 2017) ..........................................................................................3

Kim v. Apple, Inc.,
    2014 WL 3056136 (D.D.C. July 7, 2014) ........................................................................8

Kinderstart.com LLC v. Google, Inc.,
    2006 WL 3246596 (N.D. Cal. July 13, 2006) .................................................................10

*Klayman v. Zuckerberg,
    753 F.3d 1354 (D.C. Cir. 2014) .............................................................................. passim

Kreuzer v. Am. Acad. of Periodontology,
    735 F.2d 1479 (D.C. Cir. 1984) .....................................................................................13

La'Tiejira v. Facebook, Inc.,
    272 F. Supp. 3d 981 (S.D. Tex. 2017) ...........................................................................17

Langdon v. Google, Inc.,
    474 F. Supp. 2d 622 (D. Del. 2007) ....................................................................9, 10, 17

Linens of Europe, Inc. v. Best Mfg., Inc.,
    2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004) ...............................................................14

Lloyd Corp. v. Tanner,
    407 U.S. 551 (1972) .........................................................................................................9

Lujan v. Defs. of Wildlife,
    504 U.S. 555 (1992) ...........................................................................................3, 4, 5, 7

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) .......................................................................................................12

Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo,
    418 U.S. 241 (1974) .......................................................................................................17

Monsanto Co. v. Spray-Rite Serv. Corp.,
    465 U.S. 752 (1984) .......................................................................................................12

Nader v. McAuliffe,
    593 F. Supp. 2d 95 (D.D.C. 2009) .................................................................................10

Nyabwa v. FaceBook,
    2018 WL 585467 (S.D. Tex. Jan. 26, 2018) ....................................................................8

O'Kroley v. Fastcase, Inc.,
    831 F.3d 352 (6th Cir. 2016) .........................................................................................20

*Pennie v. Twitter, Inc.*,
   281 F. Supp. 3d 874 (N.D. Cal. 2017) ..................................................................18

*\*Prager Univ. v. Google LLC*,
   2018 WL 1471939 (N.D. Cal. Mar. 26, 2018)........................................................8

*PSW, Inc. v. VISA U.S.A., Inc.*,
   2006 WL 519670 (D.R.I. Feb. 28, 2006)................................................................14

*Quigley v. Yelp, Inc.*,
   No. 17-cv-03771-RS, ECF No. 69 (N.D. Cal. Jan. 22, 2018) ...............................8

*Rebel Oil Co. v. Atlantic Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ..................................................................................14

*\*Rendell-Baker v. Kohn*,
   457 U.S. 830 (1982)...........................................................................................10, 11

*Samuels v. Rayford*,
   1995 WL 376939 (D.D.C. Apr. 10, 1995)................................................................16

*Shulman v. Facebook.com*,
   2017 WL 5129885 (D.N.J. Nov. 6, 2017) ................................................................8

*Sierra Club v. Morton*,
   405 U.S. 727 (1972)..................................................................................................4

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
   697 F. App'x 526 (9th Cir. 2017) ..........................................................................19

*Simon v. Eastern Kentucky Welfare Rights Org.*,
   426 U.S. 26 (1976)....................................................................................................5

*Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*,
   405 F. Supp. 2d 1141 (C.D. Cal. 2005) ..................................................................14

*Sun Dun, Inc. v. Coca-Cola Co.*,
   740 F. Supp. 381 (D. Md. 1990) .............................................................................14

*Syracuse Peace Council v. F.C.C.*,
   867 F.2d 654 (D.C. Cir. 1989) ...............................................................................17

*Tamburo v. Dworkin*,
   601 F.3d 693 (7th Cir. 2010) ..................................................................................13

*Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*,
   346 U.S. 537 (1954)..................................................................................................13

*\*U.S. Jaycees v. Bloomfield*,
   434 A.2d 1379 (D.C. 1981) .....................................................................................16

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
   478 F.3d 413 (1st Cir. 2007)....................................................................................18

iv

*Utah Gospel Mission v. Salt Lake City Corp.*,
    425 F.3d 1249 (10th Cir. 2005) .................................................................9

*Valspar Corp. v. E.I. duPont de Nemours & Co.*,
    873 F.3d 185 (3d Cir. 2017)...................................................................12

*Worldwide, LLC v. Google, Inc.*,
    2017 WL 2210029 (M.D. Fla. 2017) .....................................................17

*Young v. Facebook, Inc.*,
    2010 WL 4269304 (N.D. Cal. Oct. 25, 2010)..........................................8

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ...........................................................18, 20

*Zhang v. Baidu.com, Inc.*,
    10 F. Supp. 3d 433 (S.D.N.Y. 2014)......................................................17

## STATUTES

42 U.S.C. § 1983.............................................................................3, 7, 8, 11

47 U.S.C. § 230(c)(1).............................................................................17, 19

47 U.S.C. § 230(e)(3)..................................................................................18

47 U.S.C. § 230(f)(2)...................................................................................18

47 U.S.C. § 230 ................................................................................. *passim*

*D.C. Code § 2-1402.01 ..............................................................................15

*D.C. Code § 2-1402.02(24)........................................................................16

D.C. Code § 2-1403.16 .........................................................................3, 15

## RULES

Fed. R. Civ. P. 12(b)(1)..........................................................................3, 7, 20

Fed. R. Civ. P. 12(b)(6)............................................................................7, 20

## MISCELLANEOUS

Allum Bokhari, *YouTube Cuts Off Conservative News Org's Ad Revenue Without
    Explanation*, Breitbart (Aug. 24, 2018), *available at*
    https://www.breitbart.com/tech/2018/08/24/youtube-cuts-off-conservative-
    news-orgs-ad-revenue-without-explanation/ ..........................................6

PHILLIP AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶ 1433a (4th ed.
    2017) .....................................................................................................13

Ben Shapiro, *Viewpoint Discrimination with Algorithms*, National Review (Mar. 7, 2018), *available at* https://www.nationalreview.com/2018/03/social-media-companies-discriminate-against-conservatives/ ......................................................6

George Upper & Shaun Hair, *Confirmed: Facebook's Recent Algorithm Change Is Crushing Conservative Sites, Boosting Liberals*, National Review (Mar. 7, 2018) *available at* https://www.westernjournal.com/confirmed-facebooks-recent-algorithm-change-is-crushing-conservative-voices-boosting-liberals/...............................................................................................................6

Michael Nunez, *Former Facebook Workers: We Routinely Suppressed Conservative News*, Gizmodo (May 9, 2016), *available at* https://gizmodo.com/former-facebook-workers-we-routinely-suppressed-conser-1775461006.........................................................................................................6

Paula Bolyard, *96 Percent of Google Search Results for "Trump" News Are From Liberal Media Outlets*, PJMedia (Aug. 25, 2018), *available at* https://pjmedia.com/trending/google-search-results-show-pervasive-anti-trump-anti-conservative-bias/ ...............................................................................................6

## INTRODUCTION

This is a frivolous lawsuit that should be dismissed for numerous independent reasons. To begin, Plaintiff has alleged no concrete injury caused by Defendants' actions and so has no standing to bring this case. But even if Freedom Watch's vague assertions of flat user growth somehow satisfied Article III, its claims would fail as a matter of law. Defendants are private online service providers; they are not state actors bound by the First Amendment when they moderate the content that users post to their platforms. Nor has Plaintiff come close to stating viable claims under the Sherman Act or the D.C. Human Rights Act. But even if Plaintiff could state any of these claims, Defendants' judgments about what content to display on their platforms are protected by Section 230 of the Communications Decency Act, 47 U.S.C. § 230.

Plaintiff has brought frivolous claims against a social media platform in this Court before, *see Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014), and the result here should be no different. This Court should dismiss Plaintiff's complaint and, because those defects cannot be cured, Plaintiff should not be given leave to amend.

## FACTUAL BACKGROUND

### A.    Defendants' Online Services And Terms Of Service

Defendants Google LLC (formerly Google Inc.),[1] Twitter, Inc., Apple, Inc., and Facebook, Inc. ("the Defendants") operate popular online platforms used by billions of people around the world. Compl. ¶¶ 6-9. Defendants offer a variety of services to the public subject to specific rules and terms of service. Google operates an internet search engine and its wholly owned subsidiary, YouTube, LLC, operates YouTube, an online service that allows users to upload and view videos. Facebook and Twitter are social media platforms through which users

---

[1] Plaintiff purports to sue "Google, Inc." However, "Google Inc." is now known as Google LLC.

can share messages along with photos, videos, and links to content on other websites. Apple operates iTunes, an online service that allows users to access, listen to, and download a variety of audio content, including podcasts. While Plaintiff makes the wholly unsupported assertion that "Defendants act as quasi-state actors" (*id.* ¶ 99), there is no allegation that any of them (or the services they offer) are owned, controlled, directed, or otherwise operated by the government.

### B.       Freedom Watch And Its Claims Against Defendants

Plaintiff Freedom Watch USA ("Freedom Watch") is a Washington D.C. based conservative public interest organization. Compl. ¶ 50. Freedom Watch alleges it maintains accounts on each of Defendants services: it alleges that it operates a YouTube channel and purchases advertising from Google; that it operates a Twitter account; that it posts content and purchases advertisements on Facebook; and that it makes podcasts available for download through Apple's iTunes service. Compl. ¶¶ 50-51.

According to Plaintiff, Defendants have "engaged in a conspiracy to intentionally and willfully suppress politically conservative content." *Id.* ¶ 11. Freedom Watch alleges a coordinated effort between Defendants as well as "traditional media outlets" such as "[CNN], MSNBC, the New York Times and the Washington Post" to "suppress" conservative viewpoints so as to "take down" the current presidential administration. *Id.* ¶ 13. The Complaint posits that Defendants have entered into "an illegal agreement to refuse to deal with conservative news and media outlets[.]" *Id.* ¶ 57. Freedom Watch contends that Defendants collectively exercise monopoly power in the market of "media and news publications," *id.* ¶¶ 72, 74 and, through their coordinated actions are "suppress[ing] media content and advocacy," *id* ¶ 57. None of this is supported with concrete factual allegations. Instead, Plaintiff's Complaint makes broad, conclusory allegations, primarily restating opinion pieces and articles published by third parties in various journals and websites. *Id.* ¶¶ 16-19, 26-41.

2

Missing from the Complaint is any allegation that Defendants have actually censored or otherwise taken adverse action against Freedom Watch's own content. Plaintiff does not allege, for example, that any of the Defendants has removed from their platforms any posting made by Freedom Watch or that any Defendant has terminated or suspended Freedom Watch's account. Instead, Plaintiff claims that Defendants recently "beg[an] their conspiracy . . . to suppress conservative content," and thereafter Freedom Watch noticed that its "growth on these platforms has come to a complete halt, and its audience base and revenue generated has either plateaued or diminished." *Id.* ¶ 53. Plaintiff does not point to a single concrete action that any of the Defendants have supposedly taken against Freedom Watch that it believes resulted in this lack of continued growth on Defendants' platforms.

Based on these allegations, Plaintiff brought this lawsuit, which asserts claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2 (¶¶ 77-88), the D.C. Human Rights Act, D.C. Code § 2-1403.16 ("DCHRA") (¶¶ 89-95), and the First Amendment of the U.S. Constitution through 42 U.S.C. § 1983 (¶¶ 96-101).

## <u>ARGUMENT</u>

## I.   **PLAINTIFF LACKS ARTICLE III STANDING TO ASSERT ANY CLAIM**

Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(1) because Freedom Watch lacks Article III standing. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (explaining that a lack of standing is a defect in subject matter jurisdiction). "'The party invoking federal jurisdiction bears the burden of establishing'" the three core elements of Article III standing: (1) injury in fact; (2) causation; and (3) redressability. *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 981 (D.C. Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiff cannot make this showing.

**First,** Plaintiff has not alleged an injury in fact. To establish an injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan*, 504 U.S. at 560 (citations omitted). Freedom Watch's alleged injury here is neither concrete nor particularized. Plaintiff does not allege that any Defendant has removed or banned Plaintiff's content on its platform, nor does Plaintiff have any concrete factual allegation as to how Defendants' purported suppression of "politically conservative content" has affected Plaintiff in any manner that amounts to more than pure conjecture. Compl. ¶ 11. To demonstrate an injury in fact, "the party seeking review [must] be himself among the injured," *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972). Plaintiff's general allegations are insufficient to satisfy this requirement.

The only alleged injury that even purports to be specific to Freedom Watch is the bare assertion that its "growth on [Defendants'] platforms has come to a complete halt, and its audience base and revenue generated has either plateaued or diminished." Compl. ¶ 53. According to the Complaint, this harm flows from the so-called "conspiracy" to "suppress conservative content," as well as Defendants' alleged decision to "refuse to deal with Freedom Watch[.]" *Id*. With respect to the former, the relationship between the "conspiracy" and Plaintiff's platform growth is speculative: Plaintiff offers no concrete facts, or even a theory, as to how the supposed "conspiracy" affected Plaintiff's user growth on even a single one of Defendants' varied platforms. As to the latter, the Complaint offers not a single concrete factual allegation suggesting that Defendants have refused to deal with Freedom Watch, for example, by prohibiting it from using their services, terminating its accounts, or even by unilaterally removing content. To the contrary, the Complaint admits that Freedom Watch "operates its own

website, a YouTube channel as Freedom Watch TV," "a Twitter account," and "Podcasts on Apple's network," and that Plaintiff "has and *still does* pay Google and YouTube, Facebook and the other Defendants for services to promote and advertise its media content[.]" *Id.* ¶¶ 50-51 (emphasis added). Plaintiff's own allegations thus refute any supposition that Defendants have "refuse[d] to deal" with Freedom Watch, and that defeats any argument that Plaintiff has suffered an injury in fact on this basis.

  **Second**, Plaintiff has also failed to establish causation. To satisfy this second element of Article III standing, Plaintiff must allege sufficient facts for a claimed injury to be "'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Citizens for Responsibility & Ethics in Washington v. IRS*, 21 F. Supp. 3d 25, 34 (D.D.C. 2014) (quoting *Lujan*, 504 U.S. at 560) (alterations omitted). "Moreover, 'a party seeking federal jurisdiction cannot rely on speculative inferences to connect his injury to the challenged actions of the defendant.'" *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 346 (2006)) (alterations omitted); *see also Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 45 (1976) (holding that a plaintiff fails to carry its burden regarding standing where "[s]peculative inferences are necessary to connect" the injury "to the challenged actions").

  Freedom Watch's allegations here are insufficient to establish any non-speculative connection between its alleged injury and the claimed unlawful acts. Plaintiff's alleged stagnation in platform growth is connected to the Complaint's conspiracy-to-suppress theory only through the *ipse dixit* allegation that such stagnation "simply cannot be a coincidence given the facts set forth in the previous section." Compl. ¶ 54. This reasoning is the quintessential "speculative inference[] to connect [an] injury to the challenged actions" that fails to establish

causation. *Citizens for Responsibility*, 21 F. Supp. 3d at 34; *see Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996) ("[W]e routinely refuse to permit such predictive assumptions to establish standing").

The speculative nature of the Complaint is underscored by the complete absence of allegations that any of the claimed instances of discrimination against conservatives were actually directed at Freedom Watch. For example, Plaintiff's allegations regarding Twitter's supposed "shadowbanning" include no claim that Twitter actually imposed a shadow ban on Freedom Watch. Compl. ¶¶ 48-49. Similarly, the National Review article on which Plaintiff relies to advance its conspiracy allegation against YouTube, Facebook, and Twitter mentions no conduct supposedly directed by these entities at Plaintiff. *See id*. ¶¶ 19, 24, 33, 48-49.[2] The same is true for every other source cited in the Complaint.[3] Plaintiff thus lacks a single allegation that provides a basis to conclude that the stagnated growth it alleges as its harm was actually caused by anything that Defendants did. Without that, Freedom Watch is a bystander; but a "mere

---

[2] *See also* Ben Shapiro, *Viewpoint Discrimination with Algorithms*, National Review (Mar. 7, 2018), *available at* https://www.nationalreview.com/2018/03/social-media-companies-discriminate-against-conservatives/.

[3] *See* George Upper & Shaun Hair, *Confirmed: Facebook's Recent Algorithm Change Is Crushing Conservative Sites, Boosting Liberals*, The Western Journal (Mar. 13, 2018) (purporting to analyze the impact Facebook's algorithm changes have had on 50 publishers, none of which was Freedom Watch), *available at* https://www.westernjournal.com/confirmed-facebooks-recent-algorithm-change-is-crushing-conservative-voices-boosting-liberals/; Paula Bolyard, *96 Percent of Google Search Results for "Trump" News Are From Liberal Media Outlets*, PJMedia (Aug. 25, 2018) (purporting to analyze the Google algorithm using 117 media organizations, none of which were Freedom Watch), *available at* https://pjmedia.com/trending/google-search-results-show-pervasive-anti-trump-anti-conservative-bias/; Michael Nunez, *Former Facebook Workers: We Routinely Suppressed Conservative News*, Gizmodo (May 9, 2016) (not mentioning Freedom Watch, much less identifying any harm to it), *available at* https://gizmodo.com/former-facebook-workers-we-routinely-suppressed-conser-1775461006; Allum Bokhari, *YouTube Cuts Off Conservative News Org's Ad Revenue Without Explanation*, Breitbart (Aug. 24, 2018) (same), *available at* https://www.breitbart.com/tech/2018/08/24/youtube-cuts-off-conservative-news-orgs-ad-revenue-without-explanation/.

'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself" to establish standing. *Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 434 (D.C. Cir. 2002) (citation omitted).

*Third*, Plaintiff has failed to establish that it is "'likely,' as opposed to merely 'speculative,' that [its alleged] injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (citations omitted). Because the Complaint is devoid of any allegations connecting Freedom Watch's purportedly halted growth to Defendants' conduct, it is entirely speculative that a favorable decision here would increase such growth, much less boost revenues. Article III does not authorize courts to entertain such claims.

Plaintiff has not demonstrated the required elements for Article III standing, and his claims should therefore be dismissed with prejudice under FRCP 12(b)(1).

## II.     PLAINTIFF FAILS TO STATE A VIABLE CAUSE OF ACTION

Even if Freedom Watch could somehow overcome its lack of standing, its Complaint should still be dismissed under Fed. R. Civ. P. 12(b)(6) because it does not state any viable claim under the First Amendment, the Sherman Act, or the DCHRA.

### A.     Plaintiff's First Amendment Claim Fails For Lack of State Action

Plaintiff's claim under Section 1983 for an alleged violation of its First Amendment rights fails as a matter of law because Defendants are private businesses and are not state actors. It is black-letter law that "the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976); *see also Cent. Hardware Co. v. NLRB*, 407 U.S. 539, 547 (1972) ("The First and Fourteenth Amendments are limitations on state action, not on action by the owner of private property used only for private purposes."); *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (explaining that the Fourteenth Amendment "erects no shield against merely private conduct, however

discriminatory or wrongful"); *Bronner v. Duggan*, 249 F. Supp. 3d 27, 41 (D.D.C. 2017) ("To trigger First Amendment protection, the infringement upon speech must have arisen from state action of some kind.").

Applying these principles, courts have consistently rejected First Amendment claims asserted against private online service providers, including several of the Defendants in this case, for lack of state action. *See, e.g.*, *Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003) ("AOL is a private, for profit company and is not subject to constitutional free speech guarantees."); *Howard v. Am. Online, Inc.*, 208 F.3d 741, 754 (9th Cir. 2000) (dismissing First Amendment claims against AOL); *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *8 (N.D. Cal. Mar. 26, 2018) (dismissing First Amendment claim against Google and YouTube and explaining that "courts have declined to treat . . . private social media corporations, as well as online service providers, as state actors."); *Nyabwa v. FaceBook*, No. 2:17-CV-24, 2018 WL 585467, at *1 (S.D. Tex. Jan. 26, 2018) (dismissing First Amendment claim against Facebook).[4] Plaintiff's claim here fails as a matter of law for the same reason.

---

[4] *See also, e.g., Fehrenbach v. Zeldin*, No. 17-CV-5282 (JFB)(ARL), 2018 WL 4242452, *2-3 (E.D.N.Y. Aug. 6, 2018) (dismissing constitutional claims against Facebook for failure to establish that Facebook is a state actor); *Shulman v. Facebook.com*, No. 17-764 (JMV), 2017 WL 5129885, at *4 (D.N.J. Nov. 6, 2017) (same); *See Quigley v. Yelp, Inc.*, No. 17-cv-03771-RS, ECF No. 69 (N.D. Cal. Jan. 22, 2018) (dismissing constitutional claims against defendants, including Twitter, because "he cannot show that any of the defendants are state actors"); *Casterlow-Bey v. Google Internet Search Engine Co.*, No. 3:17-cv-05621-RBL-JRC, 2017 WL 6876215, at *1 (W.D. Wash. Sept. 26, 2017), *report and recommendation adopted*, No. 3:17-cv-05621-RBL-JRC, 2017 WL 6882978 (W.D. Wash. Oct. 23, 2017) (holding that Google "is not a state actor and so is not liable under § 1983"); *Forbes v. Facebook, Inc.*, No. 16-CV-404 (AMD), 2016 WL 676396, at *2 (E.D.N.Y. Feb. 18, 2016) (dismissing Section 1983 claims against Facebook for failure to allege action under color of state law); *Kim v. Apple, Inc.*, No. 14-cv-1034, 2014 WL 3056136, at *2 (D.D.C. July 7, 2014) ("to the extent that plaintiff invokes the First Amendment in his complaint, the Court notes that the First Amendment does not apply to a private entity like Apple, Inc."), *aff'd* 582 F. App'x 3 (D.C. Cir. 2014); *Young v. Facebook, Inc.*, No. 5:10-CV-03579-JF/PVT, 2010 WL 4269304, at *2 (N.D. Cal. Oct. 25, 2010) (holding that Facebook is not a state actor); *Jayne v. Google Internet Search Engine Founders*, No. 07-cv-

Plaintiff has alleged nothing to distinguish this from the multitude of cases rejecting claims that social media platforms and other private companies providing online services are state actors.

As the Supreme Court has explained, state action can be found only where "there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). The Complaint here alleges nothing of the sort. Plaintiff does not even attempt to suggest that any of the Defendants' supposed actions in regard to Freedom Watch had any "nexus" with the government, much less that Defendants' actions somehow were the equivalent of those taken by the state itself.

Instead, Plaintiff offers only the conclusory allegation that "Defendants created, operate, and control public platforms that are for public use and public benefit and invite the public to utilize their platforms as a forum for free speech." Compl. ¶ 98. But private businesses like the Defendants do not become state actors merely because they are open to the public or because they provide a place for speech on the Internet. *See Lloyd Corp. v. Tanner*, 407 U.S. 551, 569 (1972) ("Nor does property lose its private character merely because the public is generally invited to use it for designated purposes."); *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1255 (10th Cir. 2005) ("Certainly, property does not become a public forum simply because a private owner generally opens his property to the public."); *Green*, 318 F.3d at 472 ("We are unpersuaded by Green's contentions that AOL is transformed into a state actor because

---

1677, 2007 WL 2852383, at *1 & n.4 (M.D. Pa. Sept. 27, 2007), *aff'd*, 263 F. App'x 268 (3d Cir. 2008) (dismissing with prejudice civil rights claim against Google because "[t]here is no valid assertion that [Google's actions are] somehow a violation of the law or the Constitution"); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 632 (D. Del. 2007) (dismissing First Amendment claim because Google is not a state actor); *Cyber Promotions, Inc. v. Am. Online, Inc.*, 948 F. Supp. 436, 441-45 (E.D. Pa. 1996) ("AOL is not a state actor and there has been no state action by AOL's activities").

AOL provides a connection to the Internet on which government and taxpayer-funded websites are found, and because AOL opens its network to the public whenever an AOL member accesses the Internet and receives email or other messages from non-members of AOL.").[5]

Nor can Plaintiff establish that Defendants qualify as state actors on the theory that the state has delegated to them a public function "traditionally the exclusive prerogative of the State." *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982) (emphasis modified) (citation omitted). Here, Plaintiff fails to make any allegation that the Government has delegated any authority to Defendants, much less that they are engaged in a function "that is 'traditionally the exclusive prerogative of the State.'" *Committee of United States Citizens Living in Nicar. v. Reagan*, 859 F.2d 929, 947 (D.C. Cir. 1988) (quoting *Jackson*, 419 U.S. at 353); *accord Nader v. McAuliffe*, 593 F. Supp. 2d 95, 102 (D.D.C. 2009) ("[I]t is well-settled that a public function 'is not simply one "traditionally employed by governments," but rather one "traditionally exclusively reserved to the State."'").

Indeed, courts have repeatedly recognized that the provision of online services is not an exclusive government function. *See, e.g.*, *Kinderstart.com LLC v. Google, Inc.*, No. C-06-2057-JF (RS), 2006 WL 3246596, at *5 (N.D. Cal. July 13, 2006) (holding that Google is not a state actor because providing online services is "neither traditionally nor exclusively governmental"); *Cyber Promotions*, 948 F. Supp. at 441-42 ("AOL exercises absolutely no powers which are in any way the prerogative, let alone the *exclusive* prerogative, of the State."); *accord Island Online, Inc. v. Network Solutions, Inc.*, 119 F. Supp. 2d 289, 306 (E.D.N.Y. 2000) ("[T]he

---

[5] *See also, e.g., Langdon*, 474 F. Supp. 2d at 631-32 (rejecting argument that "internet search engines are public forums, and that private property opened to the public may be subject to the First Amendment"); *Cyber Promotions*, 948 F. Supp. at 442 ("Although AOL has technically opened its e-mail system to the public by connecting with the Internet, AOL has not opened its property to the public by performing any municipal power or essential public service and, therefore, does not stand in the shoes of the State.").

Internet is, by no stretch of the imagination, a traditional and exclusive public function. For most of its history, its growth and development have been nurtured by and realized through private action."). It makes no difference in this regard that Defendants' services provide benefits to the public: "That a private entity performs a function which serves the public does not make its acts state action." *Rendell-Baker*, 457 U.S. at 842; *see also Jackson*, 419 U.S. at 353 (rejecting argument that public function test extends to "all businesses 'affected with the public interest'").

Finally, Plaintiff's unadorned allegation that Defendants are "quasi-state actors" is legally deficient. Plaintiff neither explains what the term "quasi-state actor" means, much less alleges facts that support any such claim. In *Howard*, the Ninth Circuit rejected a nearly identical allegation that AOL was a "quasi-public utility," explaining that "this claim is insufficient to hold that AOL is an 'instrument or agent' of the government." 208 F.3d at 754 ("nothing in the record that supports [plaintiffs'] contention that AOL should be considered a state actor"); *see also Estavillo v. Sony Comput. Entm't Am.*, No. C-09-03007 RMW, 2009 WL 3072887, at *2 (N.D. Cal. Sept. 22, 2009) ("In providing this electronic space that users can voluntarily choose to entertain themselves with, Sony is merely providing a robust commercial product, and is not 'performing the full spectrum of municipal powers and [standing] in the shoes of the State.'") (citation omitted)). The same is true here.

In sum, because Defendants are not engaged in functions traditionally reserved exclusively for the government, they are not state actors and are not subject to the strictures of the First Amendment. Plaintiff's claim under Section 1983 fails as a matter of law.

**B.     Plaintiff Cannot State A Claim Under the Sherman Act**

Freedom Watch advances two frivolous Sherman Act claims. The First Cause of Action asserts that Defendants conspired or acted in a consciously parallel manner to "depress" "conservative media content" in violation of Sherman Act § 1. The Second Cause of Action

asserts that Defendants have "collectively" monopolized "[the] market for media and news publications (and the submarket for political media and news publications)" in violation of § 2. Compl. ¶ 72. Both claims fail as a matter of law.

*Section 1 claim*. The Section 1 claim fails because Freedom Watch has not alleged any facts to suggest that Defendants conspired in any way. There are no allegations that any of the Defendants met, signaled, or otherwise communicated; acted against its own individual self-interest; or otherwise "conscious[ly] committe[d] to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). The only allegations are that each Defendant has "actively suppressed conservative content." Compl. ¶ 19 & *passim.* That is not a conspiracy.

The Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), disposes of Plaintiff's claim. *Twombly* is not merely a pleading case; it is also a leading antitrust decision holding that a claim of antitrust conspiracy "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." *Id.* at 556-57. The Complaint here alleges *no* such facts. There is not a word to suggest that Twitter, Google, Facebook, or Apple reached any agreement on anything to do with conservative voices. The Complaint simply asserts the legal conclusion that Defendants agreed or conspired. But, as *Twombly* holds, those kinds of conclusory allegations of conspiracy do not suffice to survive a motion to dismiss. *See id.*; a*ccord, e.g., Valspar Corp. v. E.I. duPont de Nemours & Co.*, 873 F.3d 185, 194-98 (3d Cir. 2017) (31 parallel price increase announcements were insufficient evidence of conspiracy given the absence of evidence of actions against the defendants' self-interest, where there was no "proof that the defendants got together and exchanged assurances of common action or otherwise

adopted a common plan"). Just saying that Defendants conspired, without a word of factual support, does not state a claim. *Twombly*, 550 U.S. at 562-64; *see also Tamburo v. Dworkin*, 601 F.3d 693, 699-700 (7th Cir. 2010).

The Complaint's alternative theory that it can state a claim based on conscious parallelism without actual agreement or conspiracy, Compl. ¶ 80, is equally barred by controlling Supreme Court precedent. "Conscious parallelism" refers to the decisions of one or more competitors to follow the lead of another *but without any agreement to do so.* The Supreme Court held over 60 years ago that consciously parallel conduct is not conspiracy and, therefore, not actionable under Section 1. *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 541 (1954). And *Twombly* applied that settled precedent in the context of a motion to dismiss, holding that "'conscious parallelism . . . is not in itself unlawful," and "a naked assertion of conspiracy in a § 1 complaint . . . without some further factual enhancement" does not state a plausible claim entitled to relief. *Twombly*, 550 U.S. at 553–54, 557; *see also* 6 PHILLIP AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶ 1433a (4th ed. 2017); *Kreuzer v. Am. Acad. of Periodontology*, 735 F.2d 1479, 1487-88 (D.C. Cir. 1984). Plaintiff's Section 1 claim fails accordingly.

***Section 2 claim***. Freedom Watch's Section 2 claim is just as meritless. It is based on the assertion that "Defendants *collectively* have obtained monopoly power in the relevant markets[.]" Compl. ¶ 74 (emphasis added). But there is no cognizable claim for collective monopolization (or, as it is more popularly called, "shared monopoly"). Such a claim has consistently and repeatedly been rejected by the courts. Monopolization under Section 2 requires monopoly by *a*

*single firm.*[6] As this Court has held, "[t]his shared monopoly argument is insufficient to state a claim that defendants have monopolized or attempted to monopolize the [relevant] market in violation of Section 2 of the Sherman Act when Section 2 liability requires actual or attempted monopolization by one defendant." *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 42 (D.D.C. 2007), *aff'd* 409 F. App'x 362 (D.C. Cir. 2011). Numerous other cases are in accord.[7] Freedom Watch's Section 2 claim thus fails as a matter of law.

**Antitrust standing.** Under Sections 4 and 16 of the Clayton Act, to have "antitrust standing," a plaintiff must also allege facts establishing concrete actual or threatened injury-in-fact, a requirement more rigorous than for Article III standing. *E.g., Fed. Prescription Serv. v. Am. Pharm. Ass'n*, 663 F.2d 253, 268 (D.C. Cir. 1981) ("the 'fact of injury' must be 'certainly proved'"); *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 16-18 (D.D.C. 2004). As noted above (pp. 4-6), Freedom Watch does not even allege that any of its content has in any way been "suppressed" by anyone, and the "slowing of its growth," if an injury at all, is speculative at best. Accordingly, even if Freedom Watch somehow could establish constitutional standing, its antitrust claims would still fail. *See, e.g., Nifedipine Antitrust Litig.*, 335 F. Supp. 2d at 16-17 (no standing to bring claims for injunctive relief absent allegations of a real and immediate threat of

---

[6] To the extent that Plaintiff is alleging a conspiracy to monopolize claim under Section 2, the failure to allege a conspiracy dooms any such claim as well.

[7] *E.g.*, *Arista Records LLC v. Lime Grp. LLC*, 532 F. Supp. 2d 556 (S.D.N.Y. 2007); *Rebel Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995); *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005 (2d Cir. 1989); *PSW, Inc. v. VISA U.S.A., Inc.*, No. 04-347-T, 2006 WL 519670, at *11 n.2 (D.R.I. Feb. 28, 2006) ("a claimant must, at a minimum, allege an attempt to form a single monopolizing power, not merely that two entities may share monopoly power"); *Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*, 405 F. Supp. 2d 1141, 1152 (C.D. Cal. 2005); *Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03-CIV-9612 (GEL), 2004 WL 2071689, at *1 n.1 (S.D.N.Y. Sept. 16, 2004) ("allegations of a 'shared monopoly' do not state a claim under section 2 of the Sherman Act"); *Sun Dun, Inc. v. Coca-Cola Co.*, 740 F. Supp. 381, 391 (D. Md. 1990); *Flash Elecs., Inc. v. Universal Music & Video Distribution Corp.*, 312 F. Supp. 2d 379 (E.D.N.Y. 2004).

future injuries); *Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S.

519, 537-44 (1983) (no standing where injury is speculative).

      **C.**      **Plaintiff's DCHRA Claim Fails As A Matter of Law**

Plaintiff alleges that Defendants have violated the DCHRA by discriminating against

politically conservative groups in suppressing online content on the basis of "political

affiliation." That claim fails and should be dismissed with prejudice for multiple reasons.

*First*, to state a claim for relief, Plaintiff must plead facts establishing that Defendants

engaged in an unlawful discriminatory practice. *See* D.C. Code § 2-1403.16. As discussed above

(at 4-5), however, Plaintiff does not allege that Defendants actually took any action against

Plaintiff. Plaintiff does not allege any facts to suggest that Defendants have refused to deal with

Plaintiff or that Defendants have suppressed any content or speech by Plaintiff, much less that

Defendants did so for reasons relating to political affiliation. Quite the opposite. Plaintiff alleges

that it maintains an active YouTube channel, Facebook page, Twitter account, and an Apple

Podcast platform. Compl. ¶¶ 50-51. Thus, Plaintiff's DCHRA claim fails at the threshold

because Plaintiff does not allege any discrimination by any Defendant.

*Second,* Defendants' online services are not "places of public accommodation" within the

meaning of the DCHRA as a matter of law. By its terms, the DCHRA applies only "in

employment, in places of public accommodation, resort or amusement, in educational

institutions, in public service, and in housing and commercial space accommodations." D.C.

Code § 2-1402.01. The sole basis for Plaintiff's claim is that Defendants' online services

purportedly constitute places of "public accommodation[.]" Compl. ¶ 95. But the DCHRA makes

clear that the word "place" in this context carries its ordinary meaning—a real (as opposed to

virtual), physical space. The statute defines the phrase "place of public accommodation" as "all

places included [within] the meaning of such terms as [a list of specific examples]." D.C. Code §

2-1401.02(24*); see also Hunter ex rel. A.H. v. District of Columbia*, 64 F. Supp. 3d 158, 180 (D.D.C. 2014). Every one of those examples is a real, physical space—*e.g.*, taverns, hotels, barber shops, ice cream parlors, movie theaters, etc. D.C. Code § 2-1401.02(24). The statute offers no example of an enumerated public accommodation that is not itself a physical location.

Plaintiff alleges otherwise by quoting, out of context, a specific example in the statute that refers to "establishments dealing with goods or services of any kind." Compl. ¶ 95.[8] But under basic principles of statutory interpretation, such "establishments" must be real, physical spaces, just like the rest of the listed examples. *See Beecham v. United States*, 511 U.S. 368, 371 (1994) ("That several items in a list share an attribute counsels in favor interpreting the other items as possessing that attribute as well.").

Were there any doubt about the proper scope of "place of public accommodation" in the DCHRA, the D.C. Court of Appeals removed it nearly forty years ago. The court held that because a "place of public accommodation" must be an actual "place," the phrase does not cover services or organizations; instead, it refers to physical facilities, like "a building." *U.S. Jaycees v. Bloomfield*, 434 A.2d 1379, 1381 (D.C. 1981); *accord Samuels v. Rayford*, No. 91-0365 (JHG), 1995 WL 376939, at *8 (D.D.C. Apr. 10, 1995) ("[T]o be a 'place of public accommodation' [under the DCHRA], a challenged entity must first be a 'place.'"). This defeats Plaintiff's claim:

---

[8] Plaintiff's selective quotation distorts what the statute actually says. The DCHRA divides its enumeration of public accommodations into numerous different categories, one of which is "wholesale and retail stores, and *establishments dealing with goods or services of any kind,* including, but not limited to, the credit facilities thereof." D.C. Code § 2-1402.02(24) (emphasis added). The phrase "establishments dealing with goods or services of any kind" must be read in context with "wholesale and retail stores." *Id.* Defendants' online services are not comparable to wholesale or retail stores, which are tangible physical locations.

its allegations relate solely to Defendants' online services, not any physical facilities or locations.[9]

Because Plaintiff has failed to plead facts demonstrating that Defendants discriminated against it, or that Defendants' online services are places of public accommodation, Plaintiff's DCHRA claim should be dismissed with prejudice.

## III.   PLAINTIFF'S CLAIMS ARE BARRED BY SECTION 230 OF THE CDA

Even if Plaintiff had a viable cause of action, its claims in this case still should be dismissed with prejudice because they are barred by Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c)(1).

Section 230 provides Defendants with a statutory immunity from liability for any claims arising from their performance of "traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) (quotations omitted); *see also Baldino's Lock & Key Serv., Inc. v. Google LLC*, 285 F. Supp. 3d 276, 280-84 (D.D.C. 2018). Because Plaintiff seeks to hold Defendants liable for that exact conduct, its claims are barred by Section 230. Courts routinely apply Section 230 to

---

[9] One additional reason not to interpret the DCHRA to include social media and online platforms as public accommodations is that doing so would raise serious constitutional problems under the First Amendment that this Court ordinarily avoids where a case can be resolved on other grounds. *See Syracuse Peace Council v. F.C.C.*, 867 F.2d 654, 657 (D.C. Cir. 1989) (quoting *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 345–48 (1936) (Brandeis, J., concurring)). As other courts have recognized, the First Amendment protects Defendants' decisions about how to select, sort, and display content on their platforms. *See e-ventures, Worldwide, LLC v. Google, Inc.*, Case No. 2:14-cv-646-FtM-PAM-CM, 2017 WL 2210029, at *4 (M.D. Fla. 2017) (citing *Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo*, 418 U.S. 241, 258 (1974)); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991, 995 (S.D. Tex. 2017); *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433, 441 (S.D.N.Y. 2014); *Langdon v. Google, Inc.*, 474 F. Supp. 2d 622, 629-30 (D. Del. 2007). This Court can and should avoid addressing this First Amendment issue because Plaintiff's claim under the DCHRA are subject to dismissal on straightforward grounds of statutory construction that do not threaten Defendants' constitutionally protected freedom of expression.

dismiss claims stemming from service providers' decisions to post, edit, or remove third-party content. *See, e.g.*, *Klayman*, 753 F.3d at 1357; *Bennett v. Google*, LLC, 882 F.3d 1163, 1166 (D.C. Cir. 2018); *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 422 (1st Cir. 2007); *Green*, 318 F.3d at 471-72; *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 333 (4th Cir. 1997). This Court should do the same.

The broad immunity in Section 230 applies if "(i) [Defendants are] 'provider[s] or user[s] of an interactive computer service,' (ii) the information for which [Plaintiff] seeks to hold [Defendants] liable was 'information provided by another information content provider,' and (iii) the complaint seeks to hold [Defendants] liable as the 'publisher or speaker' of that information." *Klayman*, 753 F.3d at 1357; *Baldino's*, 285 F. Supp. 3d at 280. If these elements are satisfied, Section 230 bars Plaintiff's claims seeking to hold Defendants liable for allegedly blocking, censoring, or removing content created by third-party users, regardless of the cause of action asserted. *See* 47 U.S.C. § 230(e)(3) ("No cause of action may be brought . . . that is inconsistent with this section."); *see also Universal Commc'n Sys., Inc.*, 478 F.3d at 422 (applying Section 230 to dismiss claims based on alleged violations of securities laws); *Green*, 318 F.3d at 471-73 (affirming district court's application of Section 230 to plaintiff's tort claims and consumer fraud claim); *Baldino's*, 285 F. Supp. 3d at 280 (applying Section 230 to dismiss federal antitrust and Lanham Act claims). That is the situation here.

Satisfaction of the first element is beyond dispute here: the D.C. Circuit has held that Facebook and Google qualify as providers of an "interactive computer service" because each "provides or enables computer access by multiple users to a computer server." *Bennett, LLC*, 882 F.3d at 1167 (citing 47 U.S.C. § 230(f)(2)); *see also Klayman*, 753 F.3d at 1357. Other courts have consistently held the same for Twitter and Apple. *See, e.g.*, *Pennie v. Twitter, Inc.*, 281 F.

Supp. 3d 874, 888-89 (N.D. Cal. 2017); *Free Kick Master LLC v. Apple, Inc.*, 140 F. Supp. 3d 975, 983 (N.D. Cal. 2015).

Satisfaction of the second element—that the content at issue here was "provided by another information content provider" (47 U.S.C. § 230(c)(1))—is equally indisputable. Compl. ¶¶ 1-2 (defining the purported plaintiff class as entities and individuals "who create . . . content" and "who have experienced illegal suppression . . . of their media content"); *see also* Compl. ¶¶ 21-23, 34, 40, 42, 48, 53. Plaintiff's claims all stem from Defendants' alleged censorship of conservative content on Defendants' platforms. *See, e.g.*, *id.* The Complaint includes no allegation that Defendants either "created" or "developed" that content themselves. The second element of Section 230(c)(1) immunity is thus easily established. *See, e.g.*, *Baldino's*, 285 F. Supp. 3d at 281.

Finally, Plaintiff seeks to hold Defendants liable as publishers of content created by third-party users, thereby satisfying the third element. At its core, the Complaint alleges that Defendants have violated federal and D.C. law by "censor[ing]" or "suppress[ing]" conservative content posted users. *E.g.*, Compl. ¶¶ 52-53, 55. Specifically, Plaintiff alleges that Defendants have refused to post certain conservative content, removed conservative content from their platforms, or sorted and displayed conservative content in ways that purportedly suppressed its visibility and accessibility. Compl. ¶¶ 16, 24-25, 40, 42, 48. But even accepting those unfounded allegations as true only for purposes of this motion to dismiss, those are all decisions protected by Section 230. As numerous courts have held, "decisions relating to the monitoring, screening, and deletion of content" are classic editorial choices immunized by the CDA. *Klayman*, 753 F.3d at 1359 (citing and quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008)); *Sikhs for Justice, Inc. v. Facebook, Inc.*, 697 F. App'x 526, 526 (9th Cir. 2017) (rejecting claims seeking

to hold Facebook liable for hosting and blocking content); *Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003) ("[T]he exclusion of 'publisher' liability necessarily precludes liability for exercising the usual prerogative of publishers to choose among proffered material and to edit the material published while retaining its basic form and message."); *Green*, 318 F.3d at 471 (Section 230 bars liability for "actions quintessentially related to a publisher's role").

The same is true for Defendants' decisions about how to display content on their platforms, and indeed whether to allow certain content at all—those are decisions immunized from liability by Section 230. *See O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016); *Klayman*, 753 F.3d at 1357-59; *Zeran*, 129 F.3d at 330. Thus, at bottom, Plaintiff's claims seek to hold Defendants' liable for their decisions regarding whether and how to present third-party content on their platforms, and thus inescapably seek "to hold [Defendants] liable as the 'publisher' of content." Section 230 does not allow that result, and it bars, as a matter of law, Plaintiff's claims under the Sherman Act and the DCHRA.

## CONCLUSION

Defendants Facebook, Google, Apple, and Twitter respectfully request that the Court dismiss Plaintiff's Complaint with prejudice under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).


Dated:  November 16, 2018                              Respectfully submitted,

/s/ Craig S. Primis                                       /s/ Brian M. Willen
Craig S. Primis (D.C. Bar No. 454796)          Jonathan M. Jacobson (*Pro Hac Vice*)
K. Winn Allen (D.C. Bar No. 1000590)          Brian M. Willen (D.C. Bar No. 490471)
Kirkland & Ellis LLP                                     Wilson Sonsini Goodrich & Rosati, P.C.
655 Fifteenth Street, N.W.                              1301 Avenue of the Americas, 40th Floor
Washington, D.C. 20005-5793                        New York, NY 10019-6022
Phone: (202) 879-5078                                   Phone: (212) 999-5800
Fax: (202) 879-5200                                       Fax: (212) 999-5899

*Counsel for Defendant Facebook, Inc.*          *Counsel for Defendant Twitter, Inc.*

/s/ John E. Schmidtlein

John E. Schmidtlein (D.C. Bar No. 441261)
Kannon K. Shanmugam (D.C. Bar No. 474304)
Thomas G. Hentoff (D.C. Bar No. 438394)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone: (202) 434-5000
Fax: (202) 434-5029

*Counsel for Defendant Google LLC (formerly Google Inc.)*

/s/ Michael J. Gottlieb

Michael J. Gottlieb (D.C. Bar No. 974960)
William A. Isaacson (D.C. Bar No.414788)
James A. Kraehenbuehl (D.C. Bar No. 1017809)
Boies Schiller & Flexner LLP
1401 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 237-9617
Fax: (202) 237-6131

*Counsel for Defendant Apple, Inc.*

## <u>[PROPOSED] ORDER GRANTING DEFENDANTS'</u>
## <u>MOTION TO DISMISS THE COMPLAINT</u>

The Motion to Dismiss the Complaint, filed by Defendants, came on for hearing in the

ordinary course. All appearances are noted in the record. Having considered the papers filed in

support of and in opposition to said Motion, the argument of counsel, and for good cause shown,

IT IS HEREBY ORDERED that the Motion is granted. The Complaint is dismissed with

prejudice. The clerk shall enter judgment in favor of Defendants and close the file.


Dated: _____          _____
                                    Trevor N. McFadden
                                    United States District Judge